**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JULIO EGO-AGUIRRE et al, <br>     *Plaintiffs*, <br><br> v. <br><br> CLC ASSET HOLDINGS, LLC, et al, <br>     *Defendants*. | ) <br> ) <br> ) <br> ) <br> )     3:25-CV-1570 (OAW) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**OMNIBUS ORDER**

**THIS ACTION** is before the court upon Defendants' Motion to Discharge Lis Pendens, ECF No. 19 ("Motion to Discharge"), and Motion to Dismiss, ECF No. 26 (together, "Motions").   The court has reviewed` the Motions; Plaintiff's opposition briefs, ECF Nos. 24 and 30;[1] Defendants' reply briefs, ECF Nos. 28 and 31; and the record in this matter, and is thoroughly advised in the premises.   After careful review, the Motions hereby are **DENIED**.[2]

### I.    BACKGROUND[3]

This is a dispute over property interests in a parcel of real estate in Weston, Connecticut.   Plaintiffs contend that they entered into an oral contract with Defendant Cox

---

[1] Plaintiff first filed their opposition to the Motion to Dismiss at ECF No. 29, but then amended that opposition upon consent.   The court therefore disregards the filing at ECF No. 29.

[2] The court finds that the briefs are thorough and complete and that there is no need for oral argument on the Motions.   Therefore, the request for oral argument is denied.   See D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument.").

[3] All allegations are taken from the complaint and are considered to be true for the purpose of this ruling. The court appreciates Defendants' objection to Plaintiffs' proffer of additional facts in their opposition that were not alleged in the complaint, *see* ECF No. 31 at 2, and therefore disregards those newly alleged facts herein.

under which Defendant Cox would provide the capital to purchase real property and Plaintiffs would do practically everything else: select the property, handle the sale, maintain it, improve it, etc.  In exchange for these services, Plaintiffs assert that they were promised 20 years of tenancy at the property rent-free and 25% of any proceeds from the sale of the house after those 20 years.  Defendants characterize the arrangement as an oral month-to-month lease allowing Plaintiffs to occupy the property rent-free.

Whatever the agreement, it is undisputed that Plaintiffs did in fact oversee the construction of the residence over a span of approximately two years, after which they occupied the property for approximately five years.  During their occupancy, they made several substantial improvements to the house and paid no rent to Defendants.  Then, in July 2025, Defendants[4] notified Plaintiffs that the oral lease was being terminated in anticipation of a sale of the property.  Plaintiffs filed a quiet title action in state court, which Defendants properly removed to federal court.  In connection with the quiet title action, Plaintiffs also filed a lis pendens on the property, which prevents Defendants from having clean title and threatens any sale of the property.  Accordingly, they have moved to discharge the lis pendens.

Separately, Defendants also have moved to dismiss this action entirely.  In both Motions, they have raised the same arguments.  Given the similarity of the legal standards the court must apply to the Motions, it is most efficient to handle them both simultaneously.

---

[4] In 2017, allegedly after entering into the disputed agreement with Plaintiffs, Defendant Cox formed Defendant CLC Asset Holdings LLC ("CLC") to hold his interest in the property.  The notice of eviction came from CLC, not Defendant Cox.  But Plaintiffs allege that Defendant Cox completely controls CLC such that both defendants effectively sought the eviction.

## II.    LEGAL STANDARD

To withstand a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement, but the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). However, when reviewing a 12(b)(6) motion to dismiss, the court must draw all reasonable inferences in the non-movant's favor. *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007).

The standard for sustaining a lis pendens is similarly low. Connecticut law provides that "a property owner burdened by a notice of lis pendens may rightfully challenge its validity" due to "the absence of probable cause to sustain the lis pendens claim . . . ."[5] *Donenfeld v. Friedman*, 79 Conn. App. 64, 68 (2003) (quoting *Cadle Co. v. Gabel*, 69 Conn. App. 279, 286 (2002)) (internal quotation marks omitted). "Probable cause," in turn, requires only a "bona fide belief in the existence of the facts essential

---

[5] A challenge may also be mounted on procedural grounds, but that is not argued here.

3

under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Id.* The belief need not be correct, or even more likely than not. *Id.*

### III.    <u>**DISCUSSION**</u>

Defendants' principal argument is that Plaintiffs' claims must fail because the contract they describe violates the statute of frauds. Consequently, Defendants argue that there is no probable cause to sustain the lis pendens. Plaintiffs assert a defense to the statute.

Connecticut codifies its statute of frauds clearly, prohibiting any civil action arising from any agreement "for the sale of real property or any interest in or concerning real property" or any agreement "that is not to be performed within one year from the making thereof" except where "the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . ." Conn. Gen. Stat. Ann. § 52-550(a)(4)–(5). Clearly, the agreement Plaintiffs describe concerned an interest in real property and could not be performed within one year of its creation, so the statute certainly applies.[6]

Connecticut courts have declined to enforce the statute of frauds, though, where necessary "to prevent the use of the statute itself from accomplishing a fraud." *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 60 (2005). In such cases, a party may be equitably estopped from asserting the statute. "Equitable estoppel is a doctrine that operates in

---

[6] Notably, lease agreements for real property for a term of less than one year, where the property is occupied by the lessee, are excepted from the statute. *Id.* § 52-550(b). Thus, the agreement as Defendants describe it (a month-to-month lease) does not fall afoul of the statute.

many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct." *Id.* Generally, "[t]here are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Id.* (quoting *DeLuca v. C.W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 544–45 (1978)) (alteration in original). When applied to the statute of frauds, though, the party seeking to benefit from estoppel also must show part performance of the contract. *Id.*

Plaintiffs assert that they have alleged facts sufficient to show that Defendants should be equitably estopped from asserting the statute. Defendants disagree.

The court begins with the part performance requirement. This element is intended be evidentiary in nature, which is to say, part performance is necessary to show that a contract actually existed because the performance itself would not have occurred absent a contract. *Id.* at 62 Defendants argue that (1) there are many reasons why Plaintiffs would expend significant personal resources improving the house, (2) there can be no part performance of an agreement to agree in the future, and (3) with respect to the lis pendens in particular, that the very terms Plaintiffs describe are patently incredible.

The first two arguments may be disposed of summarily. Defendants present no authority to suggest that Plaintiffs must show that there was no other reason they invested so much time and money in improvements, and the court has found none. Rather, both the standard for dismissal and for discharge of a lis pendens merely require a showing of facts from which a reasonable factfinder *might* find in Plaintiffs' favor. Thus, that argument

5

is wholly inapposite.  And Plaintiffs' allegations do not describe a contract to agree in the future.  The alleged contract clearly agreed at the moment of formation for future action in exchange for future remuneration, which is typical for any contract.

With respect to the third argument, while the court agrees that a contract by which one might live rent-free in a beautiful home in a highly desirable area seems too good to be true, it is undisputed that that is precisely what happened for five years.  It is similarly incredible that anyone might devote their energy to selecting a parcel of land, designing a house to be built thereon, and supervise construction thereof, even taking time off of one's paying job to do so, all for *no compensation*.   But it also is undisputed that that occurred here.  The court must conclude that a reasonable jury might find that these circumstances are all so unusual that they can only be explained by the agreement Plaintiffs describe.  Accordingly, the evidentiary element is satisfied.

The court turns, then, to the other two elements: "statements, acts or omissions that lead a party to act to his detriment in reliance on the contract" and "knowledge or assent to the party's actions in reliance on the contract . . . ."  *SS-II, LLC v. Bridge St. Assocs.*, 293 Conn. 287, 295 (2009).  Defendants make no specific argument as to either of these elements, but Plaintiffs assert in their complaint that they behaved in conformance with the representations made in the creation of the contract at issue, expending considerable personal human and financial resources to discharge their obligations thereunder, including the time and effort necessary to secure the land at issue, construct the house, and maintain the property.  They even made certain improvements (a garage and a deck) with their own money, as they believed those improvements would be for their own use and benefit for a substantial period of time.  Furthermore, they allege

that Defendants ratified this behavior throughout the sale, construction, and improvement of the property.  These are sufficient to show at the dismissal stage Defendants' inducement of certain conduct from Plaintiffs, Plaintiffs' actions to their own detriment in reliance upon Defendants' representations, and Defendants' acknowledgement and assent to Plaintiffs' actions.  Thus, the court finds that the other two elements of an equitable estoppel defense are plausibly pled.

Finally, Defendants argue that even if there was a contract, its terms are too vague to be enforceable.  First, Defendants assert that the alleged agreement contains too many "assumptions" (that the parties would develop the property, the value of those developments, that the property would be offered for sale after 20 years, and that the property would be sold).  But the court disagrees.  These "assumptions" are better characterized simply as the actions the parties agreed to take and conditions precedent thereto, the satisfaction of which easily could be determined.  And as in any investment contract, there is always the chance that the parties will experience a loss in value.  But that does not invalidate the contract.

Finally, Defendants argue there was no agreed-upon purchase price for the house. But the court agrees with Plaintiffs that Defendants' definition of certainty is too narrow. A contract need not set forth its terms in precise numerical values, but rather simply must set forth its terms in ascertainable values.  And although Defendants appear to believe that for a term to be 'ascertainable" it must be ascertainable at the time a contract is formed, Connecticut courts have enforced contract terms where the contract includes "a certain and definite method for their ascertainment and determination in the future . . . ." *LaQuerre v. Singh*, No. HDSP-123217, 2003 WL 21783364, at *3 (Conn. Super. Ct. July

7

30, 2003) (quoting *Toys, Inc. v. F.M. Burlington Co.*, 582 A.2d 123, 124 (1990)). Here, Plaintiffs assert that their contract granted them 25% of the proceeds of the sale of the property. That value easily is ascertainable, which is all that is required to enforce the contract. Indeed, given the uncertainties of future real estate markets, it is more sensible to construct the contract in this way, without a specified sale price. That argument therefore also is rejected, and the court's conclusion that equitable estoppel is applicable here remains undisturbed.

For these reasons, the Motion to Dismiss is denied as to Counts One, Six, and Seven. And because Defendants' Motion to Discharge relies entirely upon the application of the statute of frauds, the court must deny that motion as well. With their adequate pleading of an exception to the statute, Plaintiffs have shown the probable cause necessary to support their lis pendens on the property.

Next, the court turns to Defendants' argument to dismiss the remaining claims. In addition to the contract claims discussed supra, Plaintiffs assert claims under the following theories: quantum meruit (Count Two); unjust enrichment (Count Three); promissory estoppel (Count Four); and fraudulent misrepresentation (Count Five). Defendants argue that Plaintiffs have failed to plausibly state any of these claims.

Claims of quantum meruit, unjust enrichment, and promissory estoppel do not require the existence of a formal, enforceable contract and therefore still are viable claims even if Plaintiffs fail to convince the ultimate factfinder that they negotiated a contract with Defendants as alleged. "The elements of promissory estoppel are: (1) a clear and definite promise which a promisor could reasonably have expected to induce reliance; (2) the party against whom estoppel is claimed must do or say something calculated or intended

to induce another party to believe that certain facts exist and to act on that belief; and (3) the other party must change its position in reliance on those facts, thereby incurring some injury." *Diamond Contractors, Inc. v. IPT, LLC*, No. 3:12CV317 WWE, 2013 WL 331235, at \*2 (D. Conn. Jan. 25, 2013).  A quantum meruit claim is similar, but there the promise of compensation may be implied, so a plaintiff "must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." *Total Aircraft, LLC v. Nascimento*, 93 Conn. App. 576, 582 n.5 (2006) (quoting *Burns v. Koellmer*, 11 Conn.App. 375, 383–84 (1987) (internal quotation marks omitted).  And an unjust enrichment claim requires no promise at all, but only allegations sufficient to show "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Tobin, Carberry, O'Malley, Riley & Selinger, P.C. v. Dupont*, No. 3:04CV1926(CFD), 2008 WL 11434597, at \*7 (D. Conn. Jan. 25, 2008), *subsequently aff'd sub nom. Dupont v. Tobin, Carberry, O'Malley, Riley, Selinger, PC*, 322 F. App'x 66 (2d Cir. 2009) (quoting *Paulsen v. Kronberg*, 66 Conn. App. 876, 878 (2001)) (internal quotation marks omitted).

Defendants assert that Plaintiffs have stated insufficient facts to carry these claims, but their argument rests upon a purely technical reading of the complaint.  Counts Two, Three, and Four incorporate only some of the factual allegations laid out in the overall pleading, and a narrow reading of only these paragraphs does not satisfy all the elements of these claims.  But the court is not persuaded to grant the Motion to Dismiss upon a technicality that easily could be remedied in an amended complaint.  A complaint need

9

only alert a defendant to the allegations against them.  The court is satisfied that the pleading overall alleges facts adequate to carry all three claims such that Defendants are able to defend against them.  Specifically, even if there is no enforceable contract, Plaintiffs have alleged that they were promised certain compensation in exchange for their services (the benefits of which service Defendants accepted), which compensation was withheld in contravention of Plaintiffs' reasonable expectations (which is to say, withheld unjustly).  Thus, the Motion to Dismiss is denied with respect to Counts Two, Three, and Four.

Defendants next argue that Plaintiffs' fraudulent misrepresentation claim (Count Five) must be dismissed for failure to plead the claim.  Specifically, they contend that Plaintiffs' allegations show only a change of mind and not fraud, and that Plaintiffs did not plead the claim with the particularity required by Federal Rule of Civil Procedure 9(b). They also argue that the claim cannot be stated against CLC because CLC did not exist at the time the allegedly fraudulent representations were made.

The court again can find no authority for the proposition that Plaintiffs must allege facts that can only be explained by fraudulent misrepresentation, and so the former of these arguments is rejected.  And the court finds the claim to be pled particularly enough to satisfy the Rules.   Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In this circuit, this requirement is satisfied where a complaint "(1) specif[ies] the statements that the plaintiff contends were fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements were made, and (4) explain[s] why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular*

*Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)) (internal quotation marks omitted).  Plaintiffs allege the speaker (Cox), an approximate time (2017), where the statements were made (in the course of negotiating the agreement), and in what manner the statements were fraudulent (that Cox did not intend to honor the terms he agreed to).  Thus, the court finds that the Rule is satisfied.

With respect to CLC specifically, Plaintiffs argue that they have alleged adequate facts to pierce the corporate veil such that CLC and Cox may be treated as "one and the same."  But the court need not go so far.  According to the complaint, it was *CLC* that claimed to have a verbal month-to-month lease with Plaintiffs in its eviction letter.  ECF No. 2 ¶ 32.  This indicates that at some point, whatever agreement Plaintiffs had with Cox was assumed by CLC, and accordingly, CLC is a real party in interest and a proper defendant in this action.  *See* Fed. R. Civ. P. 19(a) (requiring joinder of a party that "claims an interest relating to the subject of the action" and whose absence may impair or impede protection of that interest).

Finally, Plaintiffs also assert an "injunctive relief" claim in Count Eight, which claim Defendants assert must be dismissed because injunctive relief is a remedy and not an independent claim.  The court agrees, therefore Count Eight is dismissed, but the court accepts that Plaintiffs may seek injunctive relief in connection with the surviving claims .

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Discharge of Lis Pendens, ECF No. 19, is **DENIED.**

11

2. Defendants' Motion to Dismiss, ECF No. 20, is **DENIED in part** and is **GRANTED in part.**  The Motion is granted with respect to Count Eight.  All other claims may proceed against both Defendants.

3. Given this ruling, the Motion for Status Conference, ECF No. 42, the Motion to Stay Discovery, ECF No. 45, and the Motion to Compel Discovery, ECF No. 51, are **DENIED as moot**.

4. The Motion to Modify the Scheduling Order, ECF No. 48, is **GRANTED.**

    a. All discovery shall be completed on or before **January 20, 2027.**  The parties may set and amend any interim discovery deadlines provided those deadlines do not require amendment of the deadline for all discovery.

    b. Any motions for summary judgment shall be filed on or before **February 28, 2027.**

    c. The parties' joint trial memorandum shall be filed on or before **February 28, 2027,** if no dispositive motions are filed, or within the period set by the court upon its disposition of any dispositive motions that are filed.

    d. The parties should be prepared to proceed to trial on **March 31, 2027.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 17th day of July, 2026.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

12